IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MATTHEW SONNY THOMAS, JR.,
      Petitioner,

vs.                        Case No.:  3:17cv24/MCR/EMT

JULIE L. JONES,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 7).  Respondent filed an answer and relevant portions of the state court record (ECF No. 22).  Petitioner filed a reply (ECF No. 26).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues presented by the parties, it is the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to federal habeas relief.

I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 22).[1]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2012-CF-4120, with one count of burglary of an occupied dwelling (Count 1), one count of corruption by threat against a public servant (Count 2), one count of battery upon a law enforcement officer (Count 3), and one count of criminal mischief (with property damage greater than $200 but less than $1000) (Count 4) (Ex. A at 1).  Following a jury trial on April 23, 2013, Petitioner was found guilty as charged (Ex. B at 237, Ex. C at 57–185, Ex. D).  On May 21, 2013, the court sentenced Petitioner to a term of ten (10) years in prison on Count 1 and terms of five (5) years in prison on Counts 2 and 3, to run concurrently with each other and concurrently with Count 1, with jail credit of 282 days (Ex. B at 244–75, 280–89).  The court sentenced Petitioner to time served on Count 4 (*see id.* at 280).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D13-2994 (Ex. E).  On June 9, 2014, the

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted by Respondent (ECF No. 22).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

First DCA affirmed the judgment as to Counts 1, 2, and 3, but reversed as to Count 4, and remanded the case to the trial court for further proceedings (Ex. H).  <u>Thomas v. State</u>, 139 So. 3d 506 (Fla. 1st DCA 2014).  On remand, the trial court vacated the conviction and sentence on Count 4, and directed the clerk of court to enter a conviction for the lesser offense of criminal mischief (amount less than $200—a second degree misdemeanor) on that Count, and to correct the judgment accordingly (Ex. I).  A corrected judgment rendered on July 14, 2014 (Ex. J).

On February 6, 2015, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. L at 1–28). The state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion within sixty (60) days (*id.* at 33–34).  Petitioner filed a timely amendment (*id.* at 35–58).  The circuit court struck the amended motion as facially insufficient, particularly as to Ground 1, without prejudice to Petitioner's filing an amended motion within sixty (60) days (*id.* at 71–72).  Petitioner filed a second amended motion (*id.* at 73–97).  On March 11, 2016, the state circuit court summarily denied the second amended Rule 3.850 motion (*id.* at 105–11).  Petitioner appealed the decision to the First DCA, Case No. 1D16-1628 (Ex. M).  The First DCA affirmed the lower court's decision per curiam without written opinion on September

20, 2016, with the mandate issuing October 18, 2016 (Ex. O).  Thomas v. State, 200

So. 3d 1270 (Fla. 1st DCA 2016) (Table).

Petitioner filed the instant federal habeas action on January 8, 2017 (ECF No.

1).

## II.    STANDARD OF REVIEW

Federal courts may grant habeas corpus relief for persons in state custody

pursuant to 28 U.S.C. § 2254.  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.

Section 2254(d) provides, in relevant part:

> **(d)**  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > **(1)**  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > **(2)**  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Supreme Court explained the framework for § 2254 review

in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  The

appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under
> the "unreasonable application" clause, a federal habeas court may grant
> the writ if the state court identifies the correct governing legal principle
> from this Court's decisions but unreasonably applies that principle to the
> facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the Williams framework, on any issue presented in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *See* Thaler v. Haynes, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); Woods v. Donald, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court holdings. Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)]  does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  See Woods, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.

*See* Panetti v. Quarterman, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's holdings. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. Williams, 529 U.S. at 409; *see* Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam). In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington, *supra*, at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

Woods, 135 S. Ct. at 1376 (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on an unreasonable fact finding. *See* Gill v. Mecusker, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." Brumfield v. Cain, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based

challenges to state court adjudications.  *See* <u>Cave v. Sec'y for Dep't of Corr.</u>, 638

F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit has declined to grant

habeas relief under § 2254(d)(2) in the context of a state appellate court's summary

affirmance, where it found that the validity of the state court decision was not

premised on the trial court's unreasonable fact finding, and that the petitioner failed

to demonstrate "by clear and convincing evidence that the record reflect[ed] an

insufficient factual basis for affirming the state court's decision."  <u>Gill</u>, 633 F.3d at

1292.

Only if the federal habeas court finds that the petitioner satisfied § 2254(d),

does the court take the final step of conducting an independent review of the merits

of the petitioner's claims.  *See* <u>Panetti</u>, 551 U.S. at 954.  Even then, the writ will not

issue unless the petitioner shows that he is in custody "in violation of the Constitution

or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this standard is

difficult to meet, that is because it was meant to be."  <u>Richter</u>, 562 U.S. at 102.

Within this framework, the court will review Petitioner's claims.

III.   PETITIONER'S CLAIMS

A.   <u>Ground One:  "Failure to investigate, subpoena, and call available</u>
<u>witness Ashley Bradshaw."</u>

Petitioner alleges Ashley Bradshaw was an employee of the Relax Inn (the scene of the burglary) and was working on the night of the burglary (ECF No. 7 at 5–7).[2] Petitioner alleges Ms. Bradshaw told police that she heard Petitioner screaming for the police before he kicked in the door to the office of the Relax Inn (which was also the owner's residence), and this information was included in the police report (*id.*).  Petitioner alleges Ms. Bradshaw's testimony would have supported his necessity defense (i.e., that he broke into the office because he feared for his safety) and corroborated his trial testimony (*id.*).  Petitioner asserts Ms. Bradshaw was available to testify at trial, as evidenced by her appearance at a pre-trial hearing on April 8, 2013 (*id.*).   Petitioner contends defense counsel was ineffective for failing to investigate and depose Ms. Bradshaw, and for failing to subpoena her for trial and present her testimony (*id.*).

Respondent concedes Petitioner presented this claim to the state courts as Ground Two of his Second Amended Rule 3.850 motion (*see* ECF No. 22 at 15). Respondent contends the state court adjudicated the merits of this claim ineffective assistance of trial counsel ("IATC") claim (*id.* at 17).  Respondent contends Petitioner

---

[2] References to the page numbers of the parties' pleadings are to the page numbers automatically assigned by the court's electronic docketing system, rather than the page numbers of the original documents.

has not established that the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law, or that it was based upon an unreasonable determination of the facts (*id.* at 20–23).

        1.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

The focus of inquiry under the performance prong of <u>Strickland</u> is whether counsel's assistance was reasonable considering all the circumstances and under prevailing professional norms. <u>Strickland</u>, 466 U.S. at 688–89, 691.  "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to

reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689. "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." <u>Michael v. Crosby</u>, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting <u>Chandler</u>, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting <u>Putman v. Head</u>, 268 F.3d 1223, 1244 (11th Cir. 2001)).

If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do.'" <u>Jones</u>, 436 F.3d at 1293 (citing <u>Chandler</u>, 218 F.3d at 1314–15 n.15). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994).

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high. *See* <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th

Cir. 2002). To establish prejudice, Petitioner must show "that every fair-minded jurist would conclude 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Jones v. GDCP Warden, 753 F.3d 1171, 1184 (11th Cir. 2014) (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome," not that counsel's conduct more likely than not altered the outcome of the proceeding. Id. (citation omitted). And Petitioner must show that the likelihood of a different result is substantial, not just conceivable. Williamson v. Fla. Dep't of Corr., 805 F.3d 1009, 1016 (11th Cir. 2015) (citing Richter, 562 U.S. at 112). "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 695. The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Id. at 694–95. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal. See Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Richter, 131 S. Ct. at 788. As the Richter Court explained:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id. (citations omitted).

### 2.    Federal Review of State Court Decision

Petitioner presented this claim as Ground 2 of his Second Amended Rule 3.850 motion (Ex. L at 77–80). In the state circuit court's written decision denying the

claim, the court correctly stated the deficient performance and prejudice prongs of the

Strickland standard as the applicable legal standard (*id.* at 106). The court adjudicated

the claim as follows:

> Defendant claims counsel was ineffective for failing to investigate, subpoena, and call Ashley Bradshaw to testify at trial. Defendant alleges she would have testified consistent with her statement to police that Defendant was screaming for the police, kicked the office door down, entered the office, and was trying to get in a spot where no one could see him. Defendant contends her testimony would support his defense of necessity to the burglary. Defendant contends counsel should have at least obtained Bradshaw's deposition prior to Defendant being ordered for a competency evaluation, as so much time elapsed.

> The trial court ordered Defendant evaluated in December 2012, and Defendant was found competent to proceed in February 2013. (Exhibits F, G.) Trial counsel had subpoenaed Bradshaw, who showed up ready to testify on April 8, 2013. (Exhibit B, p. 59.) At that time, trial counsel inquired as to Bradshaw's work hours and told her she would be served for the next trial date. (Exhibit B, p. 60.) Counsel attempted to subpoena Bradshaw again and had a return of service for April 18, 2013, but Bradshaw had moved without a forwarding address or phone. (Exhibit B, pp. 64, 69.) The State argued trial counsel failed to make a reasonable effort to subpoena Bradshaw the second time, but the trial court rejected that argument. (Exhibit B, p. 71.) The trial court considered admitting Bradshaw's statement on the basis of unavailability, if the statement had been given in a hearing or deposition, but did not allow it as the statement was in a police report. (Exhibit B, pp. 72–73.).

> Counsel did attempt to subpoena Bradshaw but the witness was not available at the time of trial. This is not a situation where trial counsel would have reason to believe prior to April 2013 that Bradshaw would not be available for trial on April 22 or 23, 2013. *See* Fla. R.

> Crim. P. 3.190(i).  Therefore, the record refutes Defendant's claim of
> ineffectiveness.

(Ex. L at 108–09).  The First DCA affirmed the decision without written opinion (Ex.

M).

The state court record shows that on the morning of trial, April 23, 2013,

Petitioner's trial counsel, Attorney Cobb, requested a continuance on the ground that

Ashley Bradshaw was listed as a defense witness for trial, but was not present (*see* Ex.

L at 117; *see also* Ex. C at 58–59).  Attorney Cobb informed the court that she had

served Ms. Bradshaw with a subpoena to appear two weeks earlier, on April 8, 2013,

when the case was set for jury selection, and that Ms. Bradshaw had appeared on that

day (*see* Ex. L at 117; *see also* Ex. A, Progress Docket Report, entry dated 03/27/2013

(indicating that jury selection was set for 04/08/2013)).[3]  Attorney Cobb informed the

court that she attempted to serve Ms. Bradshaw with a subpoena for the new trial date,

but the subpoena was returned unserved on April 18, with an indication that the motel

manager stated that Ms. Bradshaw had moved and left no forwarding address (*see* Ex.

L at 117, 119).  Attorney Cobb stated that Ms. Bradshaw never had a phone, and Cobb

---

[3] When the parties appeared on April 8, 2013, Attorney Cobb requested a continuance based
upon the fact that the State notified her of new evidence, and the State made a new plea offer (Ex.
B at 210–13).  The court granted the continuance, set the case for trial the week of April 22, and
stated that no more continuances would be granted (*id.*).

had only been able to contact Bradshaw at the Relax Inn, but since Bradshaw did not work there anymore, counsel had no way of locating her (*id.*).  Attorney Cobb informed the court that she spoke with Ms. Bradshaw on April 8 regarding Bradshaw's testifying at the upcoming trial (*id.* at 118).  Attorney Cobb stated she verified with Ms. Bradshaw the hours she would be working at the motel, and told Bradshaw she would be served with a subpoena for the next trial date, but Bradshaw disappeared (*id.*).  Attorney Cobb proffered Ms. Bradshaw's testimony, based upon Cobb's conversation with Bradshaw and Bradshaw's sworn written statement to police (*id.*).  Cobb proffered that Ms. Bradshaw would testify that she heard Petitioner screaming for the police before he broke into the motel office (*id.* at 117–18).  The trial court denied Cobb's request for a continuance (Ex. C at 61).

Attorney Cobb then argued that Ms. Bradshaw's statements to police were admissible under the hearsay exception for excited utterances, pursuant to Florida Statutes § 90.803(2); however, Cobb's attempt to establish a foundation for admission under this hearsay exception was unsuccessful (*see* Ex. C at 60–73, *see also* Ex. L at 118–23).  Attorney Cobb also sought admission of Ms. Bradshaw's sworn statements to police under the hearsay exception for former testimony of an unavailable witness, pursuant to Florida Statutes § 90.804 (*see id.*).  The trial court ruled that although

Attorney Cobb had satisfied the "unavailability" prong of the hearsay exception, the "former testimony" prong was not satisfied, because Ms. Bradshaw's sworn statements were not made in a hearing or deposition and instead were made to police (*see* Ex. L at 121–23).

In light of this record, the state court reasonably determined (1) that Attorney Cobb attempted to subpoena Ms. Bradshaw for the April 23 trial, but Bradshaw was not available at the time of trial, and (2) that the circumstances were not such that Attorney Cobb would have had reason to believe that Ms. Bradshaw would not be available for trial on April 22 or 23. Although Attorney Cobb could have attempted to subpoena Ms. Bradshaw sooner than she did, or could have deposed her, it was not objectively unreasonable for Cobb to believe that her attempt to subpoena Bradshaw on April 18, 2013, would be successful and that Bradshaw would appear for trial on April 23, 2013, based upon Cobb's prior interaction with Bradshaw, and in the absence of any circumstances suggesting that Bradshaw would disappear. Furthermore, Attorney Cobb's failure to depose Bradshaw to perpetuate her testimony was not unreasonable, because Cobb had no indication that Bradshaw would be unable to attend the trial on April 23. *See* Fla. R. Crim. P. 3.190(i) (providing that a defendant may apply for an order to perpetuate testimony, but requiring that the

application be verified or supported by the affidavits of credible persons that a prospective witness resides beyond the territorial jurisdiction of the court or may be unable to attend or be prevented from attending trial). Finally, and contrary to Petitioner's assertion, the record shows that Attorney Cobb did, in fact, investigate Ms. Bradshaw as a potential witness, as evidenced by Attorney Cobb's statement that she spoke with Bradshaw, and Attorney Cobb's knowledge of Bradshaw's potential testimony.

The state court reasonably concluded that Petitioner failed to show that Attorney Cobb performed deficiently with respect to her alleged failure to investigate Ms. Bradshaw as a witness, Cobb's failure to secure Ms. Bradshaw's presence at trial, or Cobb's failure to anticipate Bradshaw's unavailability and perpetuate her testimony through deposition. Petitioner has failed to demonstrate that the state court's adjudication of Ground One was contrary to or an unreasonable application of Strickland, or based upon an unreasonable determination of the facts. Therefore, Petitioner is not entitled to federal habeas relief on Ground One.

B. Ground Two: "This issue is a new issue. On direct appeal in trial transcripts [sic] the jury wanted to ask me factual questions concerning my testimony at trial. The trial judge Linda Nobles inform [sic] them that they would have to go off [sic] there [sic] recollection of what they thought they heard, knowly [sic] if the jurors would have knew [sic] they could have been entitled to a possibility of a read back. These very very important question [sic]

<u>could have been heard from Defendant [sic] and then the outcome of the proceeding would have been different."</u>

Petitioner alleges during jury deliberations, the jury sent the following four questions to the court:

> (1) In Mr. Thomas [sic] Complaint against officers did he allege that the officers did not investigate his allegation of him [sic] being robbed? (2) Time between when deputies arrived on scene [sic]? (3) How much $ [sic] money did Mr. Thomas have when booked at the Escambia County Jail on 8/13/12 (4) What testimony did Deputy Chavers give as to what Mr. Thomas said about people chasing him upon exit [sic] from building [sic]?

(ECF No. 7 at 10). Petitioner alleges that in response to the juror's questions, the trial court instructed the jurors that they would have to rely on their memories to answer their questions (*id.*). Petitioner contends that under Florida law, when the jury submits a general request for a transcript of trial testimony, it is error for the trial court to instruct the jurors to rely on their own recollection of the testimony without informing them that they may request a "read back" of testimony (*id.*).

Petitioner appears to concede he did not exhaust this claim in the state courts (*see* ECF No. 7 at 9, 11–12; ECF No. 26 at 4–5). Petitioner appears to argue that the procedural default was caused by ineffective assistance of counsel on direct appeal (*id.*). Petitioner cites <u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012) in support of his argument (*id.*).

Respondent asserts an exhaustion defense to this claim of trial court error (ECF No. 22 at 23–28).  Respondent contends the claim should have been raised on direct appeal, but was not (*id.* at 24).   Respondent further contends Petitioner may not return to state court to exhaust this claim because a second direct appeal is not available; therefore, the claim is procedurally defaulted (*id.* at 25).   Respondent argues that Petitioner's procedural default may not be excused under Martinez, because the holding of Martinez only serves to excuse the procedural default of an IATC claim, not a claim of trial court error (*id.* at 26–27).   Respondent argues that, notwithstanding the procedural default, the claim of trial court error is not cognizable in federal habeas because it is based upon the trial court's alleged failure to comply with state law and does not state a violation of Petitioner's federal rights (*id.* at 24).

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct'

---

[4] Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
    (A)  the applicant has exhausted the remedies available in the courts of the State; or
    (B) (i)  there is an absence of available State corrective process; or
      (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

alleged violations of its prisoners' federal rights."  <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review.   <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  In such a case, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  *Id.*

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  *See* <u>Tower v. Phillips</u>, 7 F.3d 206, 210 (11th Cir. 1993); <u>Parker v. Dugger</u>, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."

----

. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).  In Martinez, the Supreme Court recognized a "narrow" and "limited" equitable exception to the general procedural default rule.  132 S. Ct. at 1315, 1319–20.  The Court decided that a prisoner may overcome a procedural default of an IATC claim when (1) the state requires such claims be raised only in a collateral proceeding; (2) the state either appoints no counsel for the initial-review collateral proceeding, or appointed counsel is constitutionally ineffective; and (3) the underlying IATC claim has some merit.  *Id.* at 1318 (emphasis added).

The record supports Respondent's exhaustion defense.  On direct appeal, Petitioner did not present a claim of trial court error with respect to the court's response to the jury's questions (*see* Ex. E).  Additionally, even if Petitioner could have properly presented his claim of trial court error in the Rule 3.850 proceeding, he did not do so; instead, he presented only claims of ineffective assistance of trial counsel (*see* Ex. L at 73–97).  Therefore, Petitioner procedurally defaulted Ground Two.

To the extent Petitioner argues that the procedural default was caused by ineffective assistance of appellate counsel on direct appeal, he is not entitled to federal

review of Ground Two through this exception.  Although ineffective assistance of counsel which rises to the level of a constitutional deprivation can serve as cause for purposes of a procedural default analysis, the issue of ineffective assistance must first be presented as an independent state claim and exhausted in the state courts.  Murray, 477 U.S. at 488; Orazio v. Dugger, 876 F.2d 1508 (11th Cir. 1989).  In Florida, a claim of ineffective assistance of appellate counsel is actionable in a petition for writ of habeas corpus filed in the appellate court to which the appeal was taken.  *See* Fla. R. App. P. 9.141(d); Davis v. State, 875 So. 2d 359, 372 (Fla. 2003).  Here, Petitioner did not present a claim of ineffective assistance of appellate counsel to the First DCA, and the limitations period set forth in Rule 9.141(d)(5) of the Florida Rules of Appellate Procedure has expired.  Therefore, any such claim could not serve as cause for the procedural default of Ground Two.

Additionally, Petitioner's reliance upon Martinez is misplaced.  As Respondent correctly points out, the narrow exception recognized in Martinez applies only to claims of ineffective assistance of trial counsel that are otherwise procedurally barred.  *See* Gore v. Crews, 720 F.3d 811, 816 (11th Cir. 2013) (emphasis added).  The Supreme Court and the Eleventh Circuit have declined to extend Martinez to other claims.  *See* Davila v. Davis, 137 S. Ct. 2058, 2065 (2017) (declining to extend

Martinez to a procedurally defaulted claim of ineffective assistance of appellate counsel); Gore v. Crews, 720 F.3d 811, 816 (11th Cir. 2013) (declining to extend Martinez to claim that habeas petitioner was mentally incompetent to be executed). Therefore, Petitioner may not rely upon Martinez to excuse the procedural default of his claim of trial court error.

Petitioner failed to exhaust Ground Two, and he has failed to demonstrate he is entitled to federal review of this claim through an exception to the procedural bar. Therefore, Petitioner is not entitled to habeas relief on Ground Two.

IV.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" Miller-El v.

Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting

§ 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has

shown that 'jurists of reason could disagree with the district court's resolution of his

constitutional claims or that jurists could conclude the issues presented are adequate

to deserve encouragement to proceed further.'"  Buck v. Davis, 580 U.S.—, 137 S. Ct.

773 (2017) (citing Miller-El, 537 U.S. at 327).  Here, Petitioner cannot make that

showing.  Therefore, the undersigned recommends that the district court deny a

certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides:  "Before entering the final order,

the court may direct the parties to submit arguments on whether a certificate should

issue."  Thus, if there is an objection to this recommendation by either party, that party

may bring this argument to the attention of the district judge in the objections

permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the amended petition for writ of habeas corpus (ECF No. 7) be

**DENIED**.

2.    That a certificate of appealability be **DENIED**.

Case No.:  3:17cv24/MCR/EMT

At Pensacola, Florida, this <u>9</u><sup>th</sup> day of August 2018.


<u>/s/ *Elizabeth M. Timothy*</u>
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**